## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **GUSTAVO ALVAREZ RIVAS, JUAN GUILLERMO GUERRERO ZARATE, RENE ALEJANDRO SANTAMARIA HERNANDEZ and ANDRES VALERIO MORALES,** | : : : : : : | **Civil Action No.:** _____ |
| **Plaintiffs,** | : : | **Jury Trial Demanded** |
| **v.** | : : : | |
| **VICTORY GARDENS, INC., SNOW BUTLERS, L.L.C., MICHAEL BUTLER and JUSTIN BUTLER,** | : : : : | |
| **Defendants.** | : | |

### COMPLAINT

### NATURE OF ACTION

1.     Plaintiffs Gustavo Alvarez Rivas, Juan Guillermo Guerrero Zarate, Rene Alejandro Santamaria Hernandez, and Andres Valerio Morales (collectively "Plaintiffs"), through their undersigned counsel, file this Complaint against Defendants Victory Gardens, Inc. ("Victory Gardens"), Snow Butlers, L.L.C. ("Snow Butlers"), Michael Butler, and Justin Butler (collectively "Defendants"), for violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, the Pennsylvania Minimum Wage Act ("PMWA"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.*, and Pennsylvania common law.

2.     Plaintiffs worked for Victory Gardens and Snow Butlers, two companies owned and/or operated by Defendants Michael Butler and Justin Butler, for overlapping periods.  At Victory Gardens, Plaintiffs worked in mulch production throughout the year.  During the winters,

Plaintiffs worked long hours doing snow removal for Snow Butlers, in addition to mulch production at Victory Gardens. Victory Gardens and Snow Butlers failed to compensate Plaintiffs for all of the hours they worked, regularly delayed payment of wages beyond thirty days, and failed to compensate Plaintiffs at the rate of one-and-a-half times their hourly rate for all of the hours they worked over forty.

3.      Defendants discriminated against Plaintiffs, who are all non-white Latino workers. Defendants' actions included: directing racially offensive language and comments at Plaintiffs, withholding and delaying their pay, and requiring them to do more dangerous work than their white coworkers. As Latino workers, Plaintiffs were given the least desirable job assignments, including dyeing mulch, which contains a mixture of coal powder and animal manure, without goggles, masks, or gloves; cleaning machines while they remained running; and fixing machines despite not receiving training on how to make repairs. Exposing Plaintiffs to these dangerous conditions resulted in multiple workplace accidents. Plaintiffs suffered numerous injuries—Mr. Guerrero broke his leg; Mr. Valerio experienced severe head trauma, and Mr. Santamaria and Mr. Alvarez suffered lacerations to their hands and fingers. Following such accidents, Defendants repeatedly instructed Plaintiffs and other Latino workers to remove their company uniforms before going to the hospital. Defendants also threatened those who sought workers' compensation for workplace injuries. This mistreatment created a hostile work environment that was unwelcomed by Plaintiffs.

4.      Plaintiffs bring this action to recover damages due to them for unrecovered wages, additional damages for claims brought herein, and just compensation for discrimination committed by Defendants.

2

## JURISDICTION AND VENUE

5.      Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims derive from a common nucleus of operative facts as the FLSA claim.

7.      This Court has jurisdiction over Plaintiffs' 42 USC § 1981 claim pursuant to 28 U.S.C. § 1343.

8.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.  The events giving rise to Plaintiffs' claims occurred within this District, Defendants are incorporated in Pennsylvania, and Defendants conduct business in this District.

## PARTIES

9.      Plaintiff Gustavo Alvarez Rivas ("Mr. Alvarez") resides in Bucks County, Pennsylvania.  He worked at Victory Gardens and Snow Butlers from May 2008 to March 2016. Mr. Alvarez's written consent to be a Plaintiff in this action pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit A.

10.     Plaintiff Juan Guillermo Guerrero Zarate ("Mr. Guerrero") resides in Delaware County, Pennsylvania.  He worked at Victory Gardens and Snow Butlers from August 2013 to November 2015.  Mr. Guerrero's written consent to be a Plaintiff in this action pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit B.

11.     Plaintiff Rene Alejandro Santamaria Hernandez ("Mr. Santamaria") resides in Montgomery County, Pennsylvania.  He worked at Victory Gardens and Snow Butlers from

February 2009 to December 2017. Mr. Santamaria's written consent to be a Plaintiff in this action pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit C.

12.     Plaintiff Andres Valerio Morales ("Mr. Valerio") resides in Bucks County, Pennsylvania. He worked at Victory Gardens and Snow Butlers from December 2003 to April 2018. Mr. Valerio's written consent to be a Plaintiff in this action pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit D.

13.     Defendant Victory Gardens, Inc. is a corporation that maintains its operational headquarters in Warrington, Bucks County, Pennsylvania and is incorporated in Pennsylvania.

14.     Victory Gardens has locations in Warrington, Warminster, and Quakertown, Pennsylvania, as well as locations in New Jersey.

15.     Victory Gardens employed Plaintiffs.

16.     Victory Gardens employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

17.     Snow Butlers, L.L.C. is a limited liability company that maintains its operational headquarters in Warminster, Bucks County, Pennsylvania and is incorporated in Pennsylvania.

18.     Snow Butlers employed Plaintiffs.

19.     Snow Butlers employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

20.     Upon information and belief, the combined annual gross volume of sales made or business done by Victory Gardens and Snow Butlers exceeds $500,000.

21.     Defendant Michael Butler is the owner and President of Victory Gardens.

22.     Upon information and belief, Defendant Michael Butler is the owner and a supervisor at Snow Butlers.

23.     Defendant Michael Butler resides in Pennsylvania.

24.     Defendant Michael Butler has the power to hire and fire employees, supervises and controls employee work schedules and/or conditions of employment, determines the rate and method of payment, and maintains employee records at Victory Gardens and Snow Butlers.

25.     Defendant Michael Butler is an employer pursuant to 29 U.S.C. § 203(d), 43 P.S. § 333.103(g), and regulations promulgated thereunder, 29 C.F.R. § 791.2, and is jointly and severally liable with Victory Gardens, Snow Butlers, and Justin Butler.

26.     Defendant Justin Butler is the son of Michael Butler.

27.     Defendant Justin Butler is a supervisor at Snow Butlers and Victory Gardens.

28.     Defendant Justin Butler resides in Pennsylvania.

29.     Defendant Justin Butler is in charge of day-to-day operations, has the power to hire and fire employees, supervises and controls employee work schedules and/or conditions of employment, determines the rate and method of payment, and maintains employee records at Victory Gardens and Snow Butlers.

30.     Defendant Justin Butler is an employer pursuant to 29 U.S.C. § 203(d), 43 P.S. § 333.103(g), and regulations promulgated thereunder, 29 C.F.R. § 791.2, and is jointly and severally liable with Victory Gardens, Snow Butlers, and Michael Butler.

31.     Victory Gardens and Snow Butlers are so interrelated that the two entities constitute an enterprise.

32.     Victory Gardens and Snow Butlers share the same address: 900 Louis Drive, Warminster, Pennsylvania 18974.

33.     The activities performed for Victory Gardens and Snow Butlers are related to each other.

34.     The activities performed for Victory Gardens and Snow Butlers are under unified operation and common control of Defendants Michael and Justin Butler.

35.     Employees for Victory Gardens and Snow Butlers, including Plaintiffs, are shared interchangeably.

36.     Upon information and belief, income, equipment, and profits are shared between the two entities.

37.     The activities performed for Victory Gardens and Snow Butlers are for a common business purpose.

38.     Pleading in the alternative, during their periods of employment for Defendants, Plaintiffs were jointly employed by Snow Butlers and Victory Gardens.

39.     Snow Butlers and Victory Gardens shared control of Plaintiffs, as Plaintiffs were supervised by both Justin Butler and Michael Butler for all snow removal work and mulch production work.

40.     Snow Butlers and Victory Gardens, through their common owners and supervisors Michael and Justin Butler, had an arrangement to share Plaintiffs' services, particularly during the winter months.

41.     All work completed by Plaintiffs for Snow Butlers was done in the interest of Victory Gardens, as the two companies operated as joint employers.

## FACTS

42.     Victory Gardens is a mulch production company based in Warrington, Pennsylvania, with locations and operations in Warminster and Quakertown, Pennsylvania and Trenton and Monmouth Park, New Jersey.

43.     Victory Gardens manufactures and supplies mulch to commercial and residential properties.

44.     Snow Butlers is a snow removal and ice management company that operates in Pennsylvania, as well as other states in the Northeast region.

45.     Plaintiffs worked at Victory Gardens manufacturing mulch throughout the year. When it snowed, they were required to stop doing mulch production work and do snow removal work for Snow Butlers instead.  After the snow removal work was completed, they returned to manufacturing mulch.

*Gustavo Alvarez Rivas*

46.     Mr. Alvarez is a non-white Latino man of Mexican national origin.

47.     Between May 2008 and March 2016, Mr. Alvarez was employed by Defendants.

48.     He worked primarily at Victory Gardens' Warrington location, where he assisted in mulch production.

49.     When it snowed, Defendants Michael and Justin Butler required Mr. Alvarez to perform snow removal work for Snow Butlers, in addition to the mulch production work for Victory Gardens.

50.     Mr. Alvarez worked for Snow Butlers to remove snow from commercial properties,

7

such as shopping malls.

51.     Mr. Alvarez completed snow removal work in various states, including Pennsylvania and New Jersey.

52.     For both Victory Gardens and Snow Butlers, Mr. Alvarez worked under the direction and supervision of Michael and Justin Butler.

53.     Mr. Alvarez worked approximately seventy-two (72) to eighty (80) hours per week.

54.     Mr. Alvarez regularly worked twelve (12) to thirteen (13) hours Monday through Friday.

55.     Mr. Alvarez worked approximately ten (10) hours on Saturdays.

56.     In the summer months, Mr. Alvarez sometimes worked eight (8) to ten (10) hours on Sundays.

57.     Mr. Alvarez's hours spent removing snow varied each year, depending on the quantity and severity of the snowstorms.

58.     Mr. Alvarez made $700.00 per week for the duration of his employment at Victory Gardens.

59.     Defendants promised Mr. Alvarez $25.00 per hour for all hours worked performing snow removal.

60.     Defendants did not pay Mr. Alvarez for all the hours worked.

61.     When paid, Mr. Alvarez received $20.00 per hour for snow removal work.

62.     Mr. Alvarez never received the time-and-a-half overtime premium for hours that he worked more than forty (40) hours per week.

63.     Victory Gardens and Snow Butlers paid Mr. Alvarez exclusively in cash.

64.     Mr. Alvarez never received pay statements from Defendants.

8

65.     Mr. Alvarez labored under dangerous conditions while employed by Defendants.

66.     In August 2012, Mr. Alvarez severely injured his foot when Justin Butler dropped a chainsaw on it without securing the tool properly.

67.     Justin Butler instructed Mr. Alvarez to remove his work uniform before he sought medical treatment.

68.     Mr. Alvarez went to the hospital for stitches.

69.     In March 2016, Mr. Alvarez was injured when his hand got stuck in a machine used to grind wood into mulch chips.  His hand was crushed and lacerated.

70.     Mr. Alvarez went to the emergency room and reported that the injury happened at work.

71.     Once Justin Butler learned that Mr. Alvarez reported the workplace injury, Justin Butler began to harass Mr. Alvarez verbally and to intimidate Mr. Alvarez by showing up at Mr. Alvarez's home.

*Juan Guillermo Guerrero Zarate*

72.     Mr. Guerrero is a non-white Latino man of Mexican national origin.

73.     Between August 2013 and November 2015, Plaintiff Guerrero was employed by Defendants.

74.     Mr. Guerrero worked at Victory Gardens' Warrington location, where he assisted in mulch production.

75.     Mr. Guerrero also worked at Victory Gardens' other locations, including Trenton and Monmouth Park, New Jersey and Morrisville and Bensalem, Pennsylvania.

76.     In the winter months, Defendants Michael and Justin Butler required Mr. Guerrero to work additional hours to conduct snow removal work.

77.     Mr. Guerrero worked for Snow Butlers to remove snow from commercial properties, such as shopping malls.

78.     Mr. Guerrero completed snow removal work in various states, including Pennsylvania and Connecticut.

79.     For both Victory Gardens and Snow Butlers, Mr. Guerrero worked under the direction and supervision of Michael and Justin Butler.

80.     Mr. Guerrero worked approximately seventy-two (72) to eighty (80) hours per week.

81.     Mr. Guerrero regularly worked twelve (12) to thirteen (13) hours Monday through Friday.

82.     Mr. Guerrero worked approximately ten (10) hours on Saturdays.

83.     In the summer months, Mr. Guerrero sometimes worked eight (8) to ten (10) hours on Sundays.

84.     Mr. Guerrero's hours spent removing snow varied each year, depending on the quantity and severity of the snowstorms.

85.     Mr. Guerrero made $850.00 per week for the duration of his employment at Victory Gardens.

86.     Defendants promised Mr. Guerrero $20.00 per hour for all hours worked performing snow removal.

87.     Defendants did not pay Mr. Guerrero for all the hours worked.

88.     During Mr. Guerrero's last winter working for Defendants, Justin Butler transported Mr. Guerrero to Hamden, Connecticut for a snow removal job.

89.     Justin Butler did not inform Mr. Guerrero where they were going or for how long.

90.     Mr. Guerrero worked an entire week, taking only short breaks from the snow removal work.

91.     Defendants did not provide Mr. Guerrero with a place to sleep or regular access to food and water.

92.     Defendants failed to compensate Mr. Guerrero in full for the hours he worked in Connecticut.

93.     Plaintiff Guerrero never received the time-and-a-half overtime premium for hours that he worked more than forty (40) hours per week.

94.     Victory Gardens and Snow Butlers paid Mr. Guerrero exclusively in cash.

95.     Mr. Guerrero never received pay statements from Defendants.

96.     Mr. Guerrero labored under dangerous conditions while employed by Defendants.

97.     In November 2015, Mr. Guerrero was working alone at a Victory Gardens' worksite in Trenton, New Jersey.

98.     When a large machine used to dye mulch malfunctioned, a metal pipe from the machine struck Mr. Guerrero in the back and then punctured his leg such that he was pinned to the ground.  Mr. Guerrero screamed for help for approximately four hours until he was found and taken to the hospital.

99.     Mr. Guerrero required surgery for his leg, extensive treatment in the hospital, and physical therapy.  He continues to experience pain in his leg.

100.    Justin Butler told Mr. Guerrero not to mention Victory Gardens if anyone asked about his accident.  When Mr. Guerrero filed a worker's compensation action to recover for medical costs and lost wages, Defendants Michael and Justin Butler threatened Mr. Guerrero and engaged in verbal harassment and physical intimidation.

101.    On multiple occasions when Mr. Guerrero encountered Defendant Justin Butler while driving, Defendant Justin Butler blocked Mr. Guerrero's vehicle using his own vehicle. Defendant Justin Butler shouted and cursed at Mr. Guerrero.

102.    Fearing Defendants Michael and Justin Butler's repeated harassment and threats, Mr. Guerrero moved to a new residence, where they do not know his address.

*Andres Valerio Morales*

103.    Mr. Valerio is a non-white Latino man of Mexican national origin.

104.    Between December 2003 and April 2018, Mr. Valerio was employed by Defendants.

105.    Mr. Valerio worked primarily in Victory Gardens' Warrington location, where he assisted in mulch production.

106.    In the winters, Defendants Michael and Justin Butler required Mr. Valerio to perform snow removal work for Snow Butlers, in addition to the mulch production work for Victory Gardens.

107.    Mr. Valerio worked for Snow Butlers to remove snow from commercial properties, such as shopping malls.  Mr. Valerio operated the snowplow.

108.    Mr. Valerio completed snow removal work in various states, including Pennsylvania and New Jersey.

109.    For both Victory Gardens and Snow Butlers, Mr. Valerio worked under the direction and supervision of Michael and Justin Butler.

110.    Mr. Valerio worked approximately seventy-two (72) to eighty (80) hours per week.

111.    Mr. Valerio regularly worked twelve (12) to thirteen (13) hours Monday through Friday.

112.    Mr. Valerio worked approximately ten (10) hours on Saturdays.

113.    In the summer months, Mr. Valerio sometimes worked eight (8) to ten (10) hours on Sundays.

114.    Mr. Valerio's hours spent removing snow varied each year, depending on the quantity and severity of the snowstorms.

115.    When Mr. Valerio first started at Victory Gardens, he was paid $100.00 per day. Shortly thereafter, he was paid at a weekly rate.

116.    As he continued to work at Victory Gardens, his weekly rate increased such that he made $950.00 per week in the beginning of 2016.

117.    From the start of his employment in 2003 until approximately March 2016, Mr. Valerio was paid only in cash.

118.    From 2003 until approximately March 2016, Mr. Valerio did not receive pay statements.

119.    Beginning in or around March 2016, Victory Gardens began to pay Mr. Valerio by check for some, but not all, of the hours worked.

120.    Beginning in or around March 2016, Victory Gardens began compensating Mr. Valerio on an hourly basis of $16.00 per hour for mulch production work.

121.    Defendants promised Mr. Valerio $25.00 per hour for all hours worked performing snow removal.

122.    Defendants did not pay Mr. Valerio for all the hours worked.

123.    Mr. Valerio never received the time-and-a-half overtime premium for hours that he worked more than forty (40) hours per week.

124.    Mr. Valerio labored under dangerous conditions while employed by Defendants.

125.    In November 2010, Mr. Valerio fell from a large machine located on the top of a mulch pile.

126.    An emergency helicopter evacuated Mr. Valerio to the hospital.

127.    Several days after the accident, Mr. Valerio returned to work.

128.    In the Victory Gardens' Warrington office, Defendant Michael Butler threatened Mr. Valerio to discourage him from filing a worker's compensation action.

129.    Mr. Valerio did not file an action against the company.

130.    He continues to experience frequent, severe headaches due to the accident.

131.    Mr. Valerio had another accident in 2013 when he fell from a machine and cut his head.

132.    Defendant Michael Butler brought him to a clinic instead of the hospital.

133.    Mr. Valerio returned home having received no treatment.

134.    Defendant Michael Butler instructed him to remove his uniform, if Mr. Valerio decided to go to the hospital, so that no one would know Mr. Valerio was injured at work.

135.    Once home, a friend saw Mr. Valerio bleeding and immediately brought him to the hospital.  He received twenty stitches in his head.

*Rene Alejandro Santamaria Hernandez*

136.    Mr. Santamaria is a non-white Latino man of Salvadoran national origin.

137.    Between February 2009 and December 2017, Mr. Santamaria was employed by Defendants.

138.    He worked primarily in Victory Gardens' Warrington location, where he assisted in mulch production.

139.    In the winters, Defendants Michael and Justin Butler required Mr. Santamaria to

14

perform snow removal work for Snow Butlers, in addition to the mulch production work for Victory Gardens.

140.    Mr. Santamaria worked for Snow Butlers to remove snow from commercial properties, such as shopping malls.

141.    Mr. Santamaria completed snow removal work in various states, including Pennsylvania and New Jersey.

142.    For both Victory Gardens and Snow Butlers, Mr. Santamaria worked under the direction and supervision of Michael and Justin Butler.

143.    Mr. Santamaria worked approximately seventy-two (72) to eighty (80) hours per week.

144.    Mr. Santamaria regularly worked twelve (12) to thirteen (13) hours Monday through Friday.

145.    Mr. Santamaria worked approximately ten (10) hours on Saturdays.

146.    In the summer months, Mr. Santamaria sometimes worked eight (8) to ten (10) hours on Sundays.

147.    Mr. Santamaria's hours spent removing snow varied each year, depending on the quantity and severity of the snowstorms.

148.    Mr. Santamaria made $700.00 per week when he began working at Victory Gardens.

149.    Beginning in or around March 2016, Victory Gardens began to pay Mr. Santamaria by check for some, but not all, of the hours worked.

150.    Beginning in or around March 2016, Victory Gardens began compensating Mr. Santamaria on an hourly basis of $16.00 per hour.

151.    Beginning in or around June 2017, Victory Gardens began compensating Mr. Santamaria at a rate of $17.00 per hour.

152.    Defendants promised Mr. Santamaria $25.00 per hour for all hours worked performing snow removal.

153.    Defendants did not pay Mr. Santamaria for all the hours worked.

154.    When paid, Mr. Santamaria received $20.00 per hour for snow removal work.

155.    Mr. Santamaria never received the time-and-a-half overtime premium for hours that he worked more than forty (40) hours per week.

156.    Mr. Santamaria labored under dangerous conditions while employed by Defendants.

157.    In 2016, Mr. Santamaria was injured when a large, concrete slab that he was moving with another worker fell on his hand and crushed his finger.

158.    Mr. Santamaria had to drive himself to the hospital, as Justin Butler and other coworkers who were present refused to take him.

159.    Mr. Santamaria received stitches and medication.

**Wage Violations**

160.    Plaintiffs' primary responsibilities were: breaking down yard debris, trees, and other organic materials into small wood chips used for mulch; mixing wood chips with animal manure, coal powder, and other chemicals to dye the mulch; removing snow from driveways, roads, and parking lots; and preparing commercial properties for ice and snowstorms in the winter.

161.    Plaintiffs are not exempt under the FLSA or the PMWA.

162.    Plaintiffs did not have the power to hire and fire any worker.

163.    Plaintiffs worked under the direct supervision of Defendants Michael and Justin

16

Butler.

164.    Plaintiffs reported to Defendants Michael and Justin Butler for all work conducted for Victory Gardens and Snow Butlers.

165.    Defendants determined Plaintiffs' work schedule and supplied the machinery used for mulch production.

166.    Defendants determined Plaintiffs' work schedule and supplied the machinery used for snow removal.

167.    Defendants Michael and Justin Butler were responsible for compensating Plaintiffs for all work performed for Snow Butlers and Victory Gardens.

168.    Upon information and belief, Defendants failed to post required signs explaining the FLSA in conspicuous places in the worksites.

169.    In or around March 2016, Defendants posted required signs explaining the FLSA in the office; however, this location was not conspicuous because Plaintiffs could not readily observe the signs in the office.

170.    Plaintiffs routinely worked twelve (12) to thirteen (13) hours per day, Monday through Friday, and approximately ten (10) hours per day on Saturday.

171.    Plaintiffs also worked ten (10) hours per day on Sundays in the summertime, as it is the high season for mulch production.

172.    On a typical day during the period Plaintiffs worked at Victory Gardens, Plaintiffs started at 6:00 a.m.

173.    The workday typically ended at approximately 6:00 p.m. or 7:00 p.m.

174.    In the summer months, Plaintiffs worked later in the evening, sometimes until 9:00 p.m. or 10:00 p.m.

17

175.     In the winter months, Plaintiffs' workday typically ended around 5:00 p.m., when it became dark.

176.     In addition to the mulch production work, Defendants Michael and Justin Butler required Plaintiffs to do snow removal work in the winter.

177.     Plaintiffs' hours spent on snow removal varied, depending on the intensity and quantity of the snowstorms.

178.     Plaintiffs were often required to work overnight—sometimes for twenty-four (24) hours straight—to remove snow during severe snowstorms.

179.     Before approximately March 2016, Victory Gardens did not maintain any records of the hours worked by its employees.

180.     Beginning in or around March 2016, Victory Gardens required Mr. Valerio and Mr. Santamaria, as well as other workers, to record their hours on a time card.

181.     A Victory Gardens' supervisor reviewed the time card, which was then purportedly used as the basis for payment of wages.

182.     Plaintiffs received compensation for some, but not all, of the hours worked.

183.     Defendants never paid any of the Plaintiffs the time-and-a-half overtime premium for hours that each Plaintiff worked more than forty (40) hours per week.

184.     Although Defendants began to record some hours worked beginning in or around March 2016, Defendants never recorded overtime hours on pay statements provided to Mr. Valerio or Mr. Santamaria.

185.     Throughout their employment with Victory Gardens and Snow Butlers, Plaintiffs regularly were not paid on the designated payday.

186.     Defendants often paid Plaintiffs late.

18

187.    Plaintiffs regularly waited several days, and sometimes weeks, to receive their wages.

188.    In the winter months, Defendants regularly compensated Plaintiffs for approximately only half of the total hours that Plaintiffs worked.

189.    When Defendants failed to pay Plaintiffs for several days, Plaintiffs were forced to visit the office of Defendants Michael and Justin Butler to ask for their wages.

190.    Defendants Michael and Justin Butler at times reacted in an aggressive manner when Plaintiffs requested the wages they were owed.

191.    For example, in November 2017, Defendant Michael Butler tore up the time card for Mr. Valerio when Mr. Valerio came to the office requesting payment for the hours recorded on the time card.

192.    Defendants regularly owed wages to Plaintiffs for a period greater than thirty days beyond the regular payday, particularly during the winter months.

193.    When Mr. Valerio terminated his employment with Defendants, Defendants owed him wages for the hours he worked over forty for the prior approximately twelve weeks.

**Discrimination and Harassment**

194.    Defendants engaged in discriminatory behavior against Plaintiffs and other non-white Latino workers because of their race.

195.    Defendants Michael and Justin Butler used racial slurs and derogatory terms to refer to Plaintiffs and other non-white Latino employees, including but not limited to the following: "illegals" and "fuckin' Mexicans."

196.    Defendants Michael and Justin Butler knew that Victory Gardens' supervisors and other employees used racial slurs and derogatory terms to refer to Plaintiffs.

19

197.    Defendants Michael and Justin Butler permitted Victory Gardens' supervisors and other employees to make racially derogatory comments towards Plaintiffs, included but not limited to the following: "wetbacks" and "fuckin' Mexicans."

198.    Defendants did not subject white workers to these comments.

199.    Defendants made the non-white Latino employees engage in dangerous work that they did not make the white workers perform.

      a.    Non-white Latino employees, including Plaintiffs, regularly handled animal manure, coal powder, and other chemicals to dye mulch with no protective gear, such as gloves, masks, or goggles.

      b.    Defendants denied non-white Latino employees, including Plaintiffs, any lunch breaks.

      c.    Plaintiffs were denied bathroom breaks and were forced to relieve themselves while continuing to operate large machinery.

      d.    Non-white Latino employees, including Plaintiffs, were assigned older machines with no air conditioning while the white employees used newer machines that did have air conditioning.

      e.    Defendants required non-white Latino workers, including Plaintiffs, to repair the machines, even though Plaintiffs were not trained as mechanics.

      f.    In order to save time, Defendants required Plaintiffs to remove debris or other materials stuck in the machines while the machines were still running.

      g.    Upon information and belief, Defendants did not require the white workers to perform repairs to the machines.

      h.    Defendants told the non-white Latino workers that repairs for any broken

equipment would be deducted from their pay.

      i.      Upon information and belief, Defendants did not tell the white workers that equipment repairs would be deducted from their pay.

      j.      Non-white Latino employees, including Plaintiffs, were required to do snow removal work for longer hours than the white employees.

      k.      Defendants Michael and Justin Butler sometimes instructed Plaintiffs to go to a worksite to do snow removal in order to finish the job started by the white workers.

200.    Plaintiffs suffered multiple workplace accidents as a result of dangerous workplace conditions.

201.    Defendants Michael and Justin Butler repeatedly threatened Plaintiffs and other non-white Latino workers to prevent them from filing workers' compensation actions against the company for workplace injuries.

202.    After a workplace injury, Defendants Michael and Justin Butler instructed non-white Latino workers to remove their Victory Gardens uniforms so that it would not appear that the workers were injured at work.

203.    Defendants separated the non-white Latino workers, including Plaintiffs, from the rest of the workers.

204.    Under the direction of Defendants Michael and Justin Butler, the non-white Latino workers labored in separate groups apart from the other workers.

205.    Defendants failed to pay non-white Latino workers, including Plaintiffs, on time.

206.    Upon information and belief, the white workers received paychecks on time.

207.    Defendants failed to pay non-white Latino workers, including Plaintiffs, for all the

hours worked.

208.    Upon information and belief, the white workers received payment for all hours worked.

209.    Defendants were motivated by race when they chose work assignments for their employees.

210.    Defendants Michael and Justin Butler were motivated by race when they failed to pay Plaintiffs the overtime premium, failed to pay Plaintiffs for all hours worked, and failed to pay Plaintiffs on time.

211.    Defendants Michael and Justin Butler's conduct was not welcomed by Plaintiffs.

212.    Defendants Michael and Justin Butler's conduct was so severe and pervasive that a reasonable person in Plaintiffs' positions would find the work environment hostile or abusive.

213.    Plaintiffs found the conduct committed by Defendants Michael and Justin Butler so severe and pervasive that it created a hostile and abusive work environment.

214.    Upon information and belief, Defendants did not afford Plaintiffs the same compensation, benefits, and terms and conditions of employment as those afforded to white employees.

215.    On September 20, 2018, Mr. Valerio filed a dual Charge of Discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission.

**SUSPENSION OF STATUTE OF LIMITATIONS**

216.    Defendants failed to post notices explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every Victory Gardens' and Snow Butlers' establishment, in violation of 29 C.F.R. § 516.4.

217.    Under the principle of discovery rule, equitable tolling, and/or the continuing violations doctrine, any statute of limitations relating to the causes of action alleged in this complaint on behalf of Plaintiffs should be tolled for the period in which Defendants actively misled Plaintiffs, Plaintiffs were unaware of the harm and wage violations, and/or Plaintiffs were unable to take action to seek a remedy for the violations.

## COUNT I
## Violation of the Fair Labor Standards Act

218.    All previous paragraphs are incorporated as though fully set forth herein.

219.    The Fair Labor Standards Act ("FLSA") requires that covered employees be compensated a minimum hourly wage of $7.25.  *See* 29 U.S.C. § 206(a)(1).

220.    The FLSA requires covered employees who work fluctuating hours each week at a fixed salary rate to earn not less than the minimum wage rate for every hour worked.  *See* 29 C.F.R. § 778.114.

221.    The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed.  *See* 29 U.S.C. § 207(a)(1).

222.    Victory Gardens is subject to the wage requirements of the FLSA because Victory Gardens is an "employer" under 29 U.S.C. § 203(d).

223.    Snow Butlers is subject to the wage requirements of the FLSA because Snow Butlers is an "employer" under 29 U.S.C. § 203(d).

224.    Michael Butler is subject to the wage requirements of the FLSA because Michael Butler is an "employer" under 29 U.S.C. § 203(d).

225.    Justin Butler is subject to the wage requirements of the FLSA because Justin Butler is an "employer" under 29 U.S.C. § 203(d).

226.    At all relevant times, Victory Gardens is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

227.    At all relevant times, Snow Butlers is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

228.    At all relevant times, Michael Butler is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

229.    At all relevant times, Justin Butler is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

230.    During all relevant times, Plaintiffs are covered employees entitled to the above-described FLSA protections.  *See* 29 U.S.C. § 203(e).

231.    Plaintiffs are not exempt from the minimum wage requirements of the FLSA.

232.    Plaintiffs are not exempt from the overtime requirements of the FLSA.

233.    Plaintiffs are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

234.    Defendants' compensation scheme applicable to Plaintiffs failed to comply with either 29 U.S.C. § 206(a)(1) or 29 C.F.R. § 778.114 with regard to the minimum wage rate.

235.    Defendants' compensation scheme applicable to Plaintiffs failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112 with regard to overtime requirements.

236.    Defendants knowingly failed to compensate Plaintiffs at the minimum wage rate for all hours worked per week, in violation of 29 U.S.C. § 206(a)(1) and 29 C.F.R. § 778.114.

237.    Defendants knowingly failed to compensate Plaintiffs at a rate of one-and-one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

238.    Upon information and belief, Defendants also failed to make, keep, and preserve records with respect to Plaintiffs sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

239.    In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

240.    Pursuant to 29 U.S.C. § 216(b), employers such as Victory Gardens, Snow Butlers, Michael Butler, and Justin Butler, who intentionally fail to pay an employee wages in conformance with the FLSA, shall be liable to the employee for unpaid wages, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II
### Violation of the Pennsylvania Minimum Wage Act

241.    All previous paragraphs are incorporated as though fully set forth herein.

242.    The Pennsylvania Minimum Wage Act of 1968 ("PMWA") requires that covered employees be compensated for all hours worked.  *See* 43 P.S. § 333.104(a) and 34 PA. CODE § 231.21(b).

243.    The PMWA also requires that covered employees be compensated for all hours worked more than forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular hourly rate at which he is employed.  *See* 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

244.    Victory Gardens is subject to the wage requirements of the PMWA because Victory

25

Gardens is an employer under 43 P.S. § 333.103(g).

245.    Snow Butlers is subject to the wage requirements of the PMWA because Snow Butlers is an employer under 43 P.S. § 333.103(g).

246.    Michael Butler is subject to the wage requirements of the PMWA because Michael Butler is an employer under 43 P.S. § 333.103(g).

247.    Justin Butler is subject to the wage requirements of the PMWA because Justin Butler is an employer under 43 P.S. § 333.103(g).

248.    During all relevant times, Plaintiffs were covered employees entitled to the above-described PMWA's protections. *See* 43 P.S. § 333.103(h).

249.    Defendants' compensation scheme that is applicable to Plaintiffs failed to comply with 43 P.S. §§ 333.104(a) and (c), 34 PA. CODE §§ 231.1(b) and 43(b).

250.    Defendants failed to compensate Plaintiffs at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

251.    Defendants failed to track accurately all of the hours that Plaintiffs worked. *See* 43 P.S. § 333.108 and 34 PA. CODE § 231.31.

252.    Pursuant to 43 P.S. § 333.113, employers, such as Victory Gardens, Snow Butlers, Michael Butler, and Justin Butler, who fail to pay an employee wages in conformance with the PMWA, shall be liable to the employee for the wages or expenses that were not paid, court costs, and attorneys' fees incurred in recovering the unpaid wages.

## COUNT III
### Violation of the Pennsylvania Wage Payment and Collection Law

253.    All previous paragraphs are incorporated as though fully set forth herein.

254.    The Pennsylvania Wage Payment and Collection Law requires employers to pay

26

all wages, including overtime wages, to their employees on a regular payday.  43 P.S. § 260.3.

255.    Defendants failed to pay Plaintiffs on a regularly scheduled payday.

256.    Defendants frequently withheld wage payments from Plaintiffs.

257.    Plaintiffs' unpaid wages for all of their hours worked and overtime payments remain more than thirty (30) days overdue, and no good faith contest or dispute exists for non-payment.

258.    The amount of unpaid wages due exceeds 5% of the gross wages payable in two or more pay periods in multiple calendar quarters, and no good faith contest or dispute exists to account for non-payment.

259.    Plaintiffs are entitled to damages pursuant to 43 P.S. § 260.10, including: unpaid wages pursuant and liquidated damages in an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500.00), whichever is greater, for each pay period from which wages remain unpaid or each calendar quarter in which shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter.

260.    Plaintiffs are entitled to reasonable attorneys' fees pursuant to 43 P.S. § 260.9a(f).

**COUNT IV**
**Unjust Enrichment**

261.    All previous paragraphs are incorporated as though fully set forth herein.

262.    Defendants have received and benefited from the uncompensated labors of Plaintiffs, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

263.    At all relevant times hereto, Defendants devised and implemented a plan to increase their earnings and profits by fostering a scheme of securing work from Plaintiffs without properly

paying compensation for all hours worked including overtime compensation.

264. Contrary to all good faith and fair dealing, Defendants induced Plaintiffs to perform work while failing to compensate them properly for all hours worked, as required by law, including overtime compensation.

265. By reason of having secured the work and efforts of Plaintiffs without proper compensation as required by law, Defendants enjoyed reduced overhead with respect to their labor costs and therefore realized additional earnings and profits to their own benefit and to the detriment of Plaintiffs.

266. Defendants retained and continue to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

267. Accordingly, Plaintiffs are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

## COUNT V
### Violations of the Civil Rights Act of 1866 as amended

268. All previous paragraphs are incorporated as though fully set forth herein.

269. Defendants engaged in unlawful employment practices in violation of the Civil Rights Act of 1866 as amended.  42 U.S.C. § 1981.

270. Title 42 U.S. Code section 1981(a) provides as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

271. Title 42 U.S. Code section 1981(b) provides as follows:

[T]he term ''make and enforce contracts'' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits,

privileges, terms, and conditions of the contractual relationship.

272.    Contracts of employment incorporate provisions required therein by federal and state law, including the requirement to pay the overtime premium for hours worked in excess of forty (40) hours in a week by non-exempt employees.

273.    Plaintiffs are non-white Latino men.

274.    By engaging in the practices complained of above, Defendants deprived Plaintiffs of the right to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

275.    At all times relevant to this matter, Defendants discriminated against Plaintiffs by offering inferior terms and conditions of employment to them compared to the terms offered to white workers.

276.    Defendants' failure to pay the overtime premium to Plaintiffs was intended to deprive Plaintiffs of their rights to make and enforce contractual terms relating to the payment of overtime established by state and federal law.

277.    Plaintiffs are entitled to compensatory damages, punitive damages, and attorneys' fees resulting from Defendants' denial of their equal rights to make and enforce contracts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief:

a.  Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

b.  Liquidated and statutory damages to the fullest extent permitted under the law;

c.  Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

d.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues of fact.


Dated:  September 21, 2018                          Respectfully submitted,

                                                    Alia Al-Khatib (PA 325456)
                                                    Nancy Rimmer (PA 205563)
                                                    Liz Chacko (PA 95115)
                                                    JUSTICE AT WORK, INC.
                                                    990 Spring Garden Street, Suite 300
                                                    Philadelphia, PA 19123
                                                    Telephone: (215) 733-0878
                                                    aal-khatib@justiceatworklegalaid.org
                                                    nrimmer@justiceatworklegalaid.org
                                                    lchacko@justiceatworklegalaid.org

                                                    *Attorneys for Plaintiffs*